Next case is Agenda No. 9, No. 129761, Paul Hasafiume v. Daniel Jurak Counsel for the appellant May it please the Court Counsel, Melinda Cole-Ross of Clausen Miller, on behalf of Dr. Jurak The issue in this case is whether damages for a spouse's lost household services terminate upon the plaintiff's spouse's remarriage in a wrongful death action in Illinois Nearly a half century of this Court's precedent and Illinois appellate court precedent says that the answer to that question is yes However, the trial court and the third district below said the answer to that question is no The trial court ruled that lost household services are not part of consortium and therefore the Carter remarriage rule does not apply The third district took a slightly different approach It ruled that lost household services are part of consortium but then divided consortium into tangible and intangible elements And said that the Carter remarriage rule only applies to the intangible elements of consortium in a wrongful death action And it does not encompass the tangible element of lost household services And it said if you've got a common loss of consortium action, then the Carter remarriage rule applies to both So, kind of a confusing ruling Neither the parties nor the courts below took the position now presented in the ITLA amicus brief That the Carter remarriage rule should be eliminated entirely and recovery should be allowed for all aspects of loss of consortium beyond the date of remarriage by the surviving spouse That issue, therefore, is not properly before this court This court has repeatedly held that an amicus filer takes the case as they find it with the issues as framed by the parties The parties to this lawsuit, including the plaintiff Paul Pasifyume, agreed that the Carter remarriage rule applied in this case to his loss of consortium claim At least with respect to loss of society, companionship, and sexual relations And the jury was so instructed pursuant to IPI 31.04, which the plaintiff tendered The only issue that was briefed by the parties to this action and decided by the courts below was whether the remarriage rule applied to loss of household services That single element of loss of consortium Dr. Jurack accordingly respectfully requests this court to reject ITLA's amicus position Attempting to raise the entire scope of the Carter remarriage rule in this case as it was not addressed below or by the parties to this action So now we would like to turn to the issue that actually is before this court Which is whether loss of household services are part of consortium subject to the Carter remarriage rule We are not riding on a clean slate here We have nearly a half century of precedent The development of loss of consortium in Illinois The development of including loss of consortium in a wrongful death action Case law specifically addressing the loss of household services element of loss of consortium And finding that the Carter remarriage rule does apply So if we look back historically, what is the foundation of this body of Illinois precedent? It's the Dini case from this court from 1960 Which held that consortium is an indivisible conceptualistic unity In addition to material services, the household services at issue It includes elements of companionship, felicity, and sexual intercourse It is not capable of dismemberment into material services and sentimental services Which it called, and I like this language, but a theoretician's boast In theory, you can parse these items apart In practicality, you cannot But that's what the third district did here Contrary to Dini, it said you can take the indivisible conceptualistic unity You can put loss of household services over here in the tangible bucket You take the rest, the loss of society, companionship, and sexual relations Into the intangible bucket And on the intangible bucket, the Carter remarriage rule applies No recovery after the date of remarriage But the tangible bucket is outside the scope of the Carter remarriage rule So it flies in the face of Dini and the conceptualistic unity And Dini was not Counsel? Yes I have a question for you Dini was decided in 1960 Yes Over the course of those decades There's been a change in how households are managed and so on In the tangible bucket that you're talking about Isn't it possible to put a specific marketplace cost on how much those services cost? For example, house cleaning Driving your kids from one place to another Those kinds of tangible services You can pay for that now, can't you? You can pay for those services? Well, maybe I'm asking it inartfully It is possible to determine from market price exactly how much those services cost No, I don't think you can do it in exactly that way When you have the conceptualistic unity of consortium If you're looking at it from that framework You're not hiring a cook You're not hiring a maid You're not hiring a laundress I mean, that's not exactly my question My question has to do with Can those specific services Which can be parsed out and identified Is it possible to Or isn't it possible to specifically identify How much it would cost to hire a cook to cook meals for your family for a week How much does a cleaning person cost? All of those things are possible to quantify monetarily Isn't that so? Well, only if you look at intangibles and say Right now, I'm just talking about the tangibles For the tangibles, you can put a price tag Outside of a marital relationship And saying what is the dollar value Because people hire those services who aren't married Who don't have a spouse performing them So it is not contingent on a marital relationship You can get a marketplace value For each of those individual services But as we've argued in our brief So too for many of the intangibles So that doesn't really provide an excellent guideline Or bright line rule for analyzing this issue For companionship in society Oftentimes nowadays people do hire caregivers They hire senior companions They hire people to spend time with family members Whether those are children or more often seniors Aging parents, things like that So to say that one is tangible A maid is tangible or a cook is tangible But a companion, a loss of society That is an intangible I don't think that distinction holds true anymore And so I don't think you can draw a bright line there And say if you can hire it Somehow it's not part of consortium Or it should be outside the remarriage rule Because when we're looking at a situation like this case And most cases The spouses are providing the services Not as a professional cook Not as a professional companion Not as a professional maid Not as a professional laundress They're providing those services Because that's part of their contribution to the marriage And that's really what is at the heart of this case Is this a stranger to the household Who's coming in for money for an hourly wage To keep the spouse company? No. Is this a paid laundress who's doing the laundry to earn money? No. So if we follow, even though I agree with you Justice There's been a change in the domestic household situation I have another question. Prior to Elliot, wasn't the loss of services recoverable In a wrongful death action? It was But that was before loss of consortium was recoverable So you had one avenue to get loss of services But you didn't have the loss of consortium avenue So when Elliot said You can recover for loss of services You can recover for loss of consortium Within the wrongful death action There was a change there And now you've incorporated the whole conceptualistic unity And that's what all the cases going forward Both Illinois Supreme Court and Illinois Appellate Court cases Moving forward have said Well now that loss of consortium Is part of the wrongful death action Remember previously before Elliot It was not, you could not recover loss of consortium In a wrongful death action Now that it's in there, what do we do with it going forward? And the law has developed over four decades Saying you've still got a conceptualistic unity You've still got a single indivisible We don't do a bucket for tangible And a bucket for intangible Now remember under wrongful death You can get loss of support, that's not part of consortium So you can get a dollar amount there You can get your pain, suffering, mental anguish At the loss of your spouse, that's not part of consortium We have just a very limited box Of what loss of consortium is And the appellate courts and the Supreme Court In looking at that have stood by the conceptualistic unity For four decades and then moving into the 1990s So bringing it up three decades When the Dotson Court specifically looked at household services They said yes, this is part of that conceptualistic unity Post Elliot It's recoverable in a wrongful death action But the rules apply That remarriage, once you've got a new spouse You don't have a lost marital relationship You might have loss of support You might have your mental anguish for the loss of the prior spouse But once you have a new spouse You no longer have loss of consortium Whether that's more tangible Or less tangible And the Dotson two courts specifically said Again, consortium is indivisible Into its various elements It unavoidably follows This is the appellate court Therefore that after Elliot, remarriage limits A claim for material services as much as it limits Any other element of consortium And that If we were to agree with you that material damages Are not recoverable after a remarriage What relief would you be seeking? A new trial or a remitter And if a remitter calculated on what basis? We are seeking either a new trial on damages Or a remitter And we have set forth calculations in our brief Saying this is the maximum amount That the jury could reasonably have awarded For the lost earnings, the loss of support If we back that out We've got approximately $500,000 worth of damages Beyond the date of remarriage In this case the plaintiff remarried after 15 months There was an offer of proof in the record Establishing that the value of material services If the expert is permitted to apply on that Was approximately $24,000 But he was allowed to testify Before the jury to a $974,000 Loss of household services So we have a $970,000 swing Which we argue is prejudicial And so we have two potential remedies Either a new trial on that damages element Or a remitter that reflects The overage based upon the record That is before this court And you're not stating a preference for the relief granted? We do not have a preference We would accept either Of course a remitter There could be a disagreement from the plaintiff As to remitter and it could go back for a new trial That way But it is our position that one of those two forms of relief Is required because of the enormity Of the dollar swing at issue here And applying the law As written it is decidedly prejudicial To Dr. Jurek I did just In the time remaining Want to draw the court's attention to Pfeiffer Which again brings us a little more recent to 1993 Where the court did draw a line between Material services and financial support And once again said loss of support is not part of consortium Does not fall within the Carter remarriage rule But material services does And we are asking this court To uphold Dinnie, to uphold Carter To uphold Dodson 1 and 2 and Pfeiffer And hold that lost household services Remain part of consortium And as such the Carter rule applies Thank you very much Counsel for the appellate Good morning Madam Chief Justice Members of the court Ms. Kollross and Madam Marshall For the record my name is Lynn Dowd And I am here today with my co-counsel Robert Napleton And David Gallagher on behalf of the plaintiff We very much look forward to this court Clarifying this important issue of the law Because we submit the essential issue Is the scope of the damages recoverable under the wrongful death act We submit the appellate court Got it right They laid out the analysis and I would like to just highlight that The evolution of loss of consortium And material services claims and damages Really goes back to the 1850s There is about 150 years of precedent to look at In reading the cases Back in the 1850s there was some iteration of a statutory wrongful death action And that is very important Because in the McFarlane case that is cited in the briefs Which goes back to 1990 from this court It was a statutory death action And the jury was instructed to award for such pecuniary loss And personal service That the deceased wife would have rendered And in that decision the Supreme Court said Pecuniary losses, material losses Cannot be ascertained with certainty Our current wrongful death act has a similar direction At issue are the damages recoverable For the pecuniary losses So what has happened to bring us here today Well we have the wrongful death act And acts going back to the 1850s We have quite a few cases Interpreting the statutory death actions I have mentioned McFarlane There is the Dotson v. Richter in 1962 Which says services performed by the decedent Who at that time was a deceased wife And mother of teen and adult children Were recoverable as pecuniary losses Not as loss of consortium So that is our founding point That is the inception of how we should analyze Lost services, household services As a pecuniary loss And in that case, the Dotson case Those damages were very similar to the ones at issue here They were damages for washing windows, cutting the grass And other household duties Eggaman, another decision cited The services, the household services at issue Repainting the house, wallpapering, grocery shopping Sweeping the floors, etc. I think we have a good understanding of household Traditional household services that were litigated in the older cases Well then concurrent with the statutory death actions We have a history of common law death cases And that's where the loss of consortium analysis originates Separate and distinct from the pecuniary damages So interesting and perhaps unfortunately From the 1850s through the early 1960s The focus unfortunately was on when the decedent was the woman And so now comes Deany in 1962 A common law loss of consortium action  And the decedent was the mother And so this court, moving in the right direction Determined that the woman's losses are no less valuable As a man, as the man's Because up until that point, the woman was considered a chap In this state, in this country So in 1962, this court put an end to that And so women now had their fair, rightful Cause of action for their loss, damages Following the death of a spouse Because of Deany, the appellate courts Of course had worked through the cases at hand And the Carter line of cases Dotson, all those that preceded the Elliot decision Really got it wrong They were looking at the precedent as a whole The common law loss of consortium cases Should not have been confused with the wrongful death Line of cases Because the wrongful death cases started with pecuniary damages Deany brought loss of consortium into Pecuniary damages Not the other way around The defendants are incorrect because they are essentially arguing That the pecuniary damages have been brought into Loss of consortium damages And the law does not support that A careful analysis of the cases doesn't do that But the essential point is that These two distinct types of damages are distinct They always have been Pecuniary, loss of material services Loss of household services Have always been tangible, ascertainable Subject to a data analysis Dr. Stan Smith who testified in this case Who gave unrebutted testimony by the way Said economists have been doing this for 60 years For decades they have been able to Evaluate lost household services Look at data, similar services Quantify them and put evaluation on them Now we know from The Hall versus Gillens case There's a presumption of a substantial pecuniary loss And various decisions say In order to proceed with a wrongful death action You don't even need an expert The expert is there to aid and assist the jury Which is exactly what happened here Dr. Smith gave tangible information On the evaluation of Lois Pasifiumi's losses To her husband I'm going to tread into that dangerous area of hypotheticals And I think the evolution of the law Unfortunately is focusing too much On traditional household services Performed by the female spouse And perhaps the cases reflect that those types of services Are not receiving their due And what they're worth And so whether they are or not The jury is the one who's going to decide that But if we were to look at a deceased spouse Who was perhaps a mechanical engineer And that decedent provided services Such as fixing everything in the house The GFI, opening the backyard pool Changing the oil, cutting the grass Painting the house That loss I think And let me add to my hypothetical The wife goes on to marry a poet I think that hypothetical graphically illustrates How those are concrete, ascertainable losses That subsequent to the death The widow would have to hire out And would have tangible losses that are quantifiable For the rest of her life And so counsel, basically you're saying that loss is ongoing Even though the person has remarried It's not accurate to assume that this new spouse Takes over what the other spouse is doing And so again, as I stated The loss is ongoing That is correct, Your Honor And I'd like to make two points on that Again, the defendants did not bring in any expert To rebut Dr. Smith and that very concept to which he testified These losses are ongoing, they're definitive And he said this is the entire economic profession All the economists hold this opinion They're asking for a new trial So we know under the standard of review With respect to the evidence produced at trial They're subject to the Pedrick standard They can't come in here and just argue That Mrs. Passifiumi did this out of love for her husband We hope that was an important component But at issue is the loss The loss is not the love she rendered to her husband in performing these services It's the lost services And those are compensable Which just as a footnote, and I don't think it's appropriate for me to get into it too much But I think this is why it's important Where if the issue before this court today Is the scope of the damages recoverable under the wrongful death act The position taken by the Illinois Trial Lawyers Association Deserves this court's consideration Even with respect to loss of consortium There is something fundamentally wrong To say that one human being can replace another There are different types of damages and losses But there is no replacement That loss is forever And it was cited, the Simmons v. University of Chicago case Where the defense in that case argued Where the child died, the fact that the couple went on to have two more children Mitigated or removed that loss And that concept was shot down Rightly so by this court One person can never replace another And so we should never be looking to The facts of, okay, well I remarried And you talked about the engineer and the poet So what if, you know, engineer and another engineer Should we even be considering something like that? Well, I raise it for the court's consideration Because I think the problem in the cases Is that there's been a focus on traditional household services Cleaning, cooking, those types And historically society didn't value them And up until Deany, those types of household services Because the woman was a chattel of her husband Were considered part of his loss of consortium There was one vote for the husband up until that point But now whether we mix it Whoever the decedent is, a man, woman You know, a spouse-spouse case Same-sex couple, the loss is real The damages are real. They're ascertainable They're quantifiable. These are pecuniary losses These are distinct. They're not the same As traditional consortium damages Such as affection, the relationship Sexual relationships, etc. These are quantifiable. The law has recognized this since 1919 Dr. Smith came in and testified to this And there's no rebuttal as to his expert testimony We have an expert here to aid the jury And hopefully the court in understanding The concreteness and the importance of being able to value These very important services Can I ask you, related to all these ideas That you're talking about You're saying that when a spouse dies The surviving spouse loses a lot Loses personal relationships And there's grief and other elements of all this That is recognized under our damages Including the quantifiable loss of Household services There's basic needs that everyone has But now the surviving spouse Has to figure out what to do in the future You're also arguing, however, that if the surviving spouse Marries someone else Those damages that were lost by the Death of the first spouse should be Continued forever, even though the person has been Remarried The whole idea about this idea about remarriage That even though there's a new spouse Who perhaps is making the bed and doing the dishes That that doesn't matter That moving forward, the damage should be Computed on the entire lifespan Of the deceased spouse Does that make sense? I think it does, Your Honor, because that issue is the loss The loss of spouse number one is forever And whether it's the Ascertainable, tangible damages that can be quantified Or the intangible Remarriage is not a replacement Someone else doing the work Someone else washing the dishes and making the bed Kind of replaces the efforts that were made before It presumes that's even happening, but the law is such That there is the collateral source rule that the Tortfeasor doesn't get the benefit of Other damages being mitigated or replaced They have to compensate the plaintiff For his losses that they caused And there's no evidence in this case That there was actual replacement of services We just have evidence that Mr. Are there cases that talk about this idea as collateral source rule? Yes, there are, Your Honor. I know we've cited them in the brief In other words, this is not the same thing As someone was injured They sue someone who caused the injury And in fact, their damages, let's say their hospital bills Were paid by their insurance That's how we usually see the collateral source rule Here we're saying because One spouse provided household services That those services can be compensated For the life of the deceased person And don't end when someone else comes into the picture Marries and does those services for the surviving spouse This doesn't feel like the insurance cases In terms of collateral source Well, it is different from an insurance case But it is analytically and conceptually Somewhat the same There really is no Number one, there's no proof The issue litigated is who caused the death And what damages did he cause So once those damages are determined, the jury would put a number on it What Your Honor is suggesting And I apologize, I know we've cited the cases in our brief And I don't have them at my fingertips But in the four corners of a wrongful death case The idea that the defense could bring in evidence Of the remarriage and talk about Are you washing the dishes now, that has been rejected That goes to mitigation And the courts are not going to get into mitigation Of pecuniary losses or loss of consortium losses And with respect to the loss of consortium As this case does reflect in the record The second marriage only lasted less than about two years So it just illustrates the idea that Loss of consortium once remarriage Once there's a remarriage, the loss of the first spouse terminates Is a flawed concept That's all we're suggesting for the court's consideration But to keep our focus within the four corners here The essential issue of which the defense is complaining Pertains to the lost household services And we submit that the law does permit A jury to put a number on those lost services They're not part and parcel of the loss of consortium They have it wrong. We had wrongful death Deeney brought consortium into that The cases did not have loss of consortium and bring material services into that There's nothing in the decisions except a few of them I think their analysis is incorrect That say these are individual conceptualistic losses That's for this court to determine today And I think it's a very important decision that only you can make We submit they're certainly divisible They're distinct types of damages Economists can do this for 60 years Now with respect to the actual calculations Defendants bring before the court In seeking their remitted or new trial They have no factual basis to do this Counsel cannot come in and say well Dr. Smith analyzed the loss of household services At about 900,000 And the loss of consortium At about 900,000 The jury came back with about 1.4, 1.5 So do the math, we're 500 off. They can't do that Dr. Smith's testimony was to aid the jury They have made no showing, and they could have As to what amounts the jury awarded For these two distinct types of damages They brought in no economist to refute these numbers And to make a different calculation For all we know, as this record stands here before the court today The jury gave zero dollars for loss of household services The lost financial services Are entirely supported by the evidence And I submit we've laid that out in detail In our briefs for your consideration I see that my time's almost up Unless the court has any other questions We would request that the evolution of this law Continue to move in the right direction Reflect the value of even traditional household services In this case performed by a woman But going forward as performed by every spouse We request that this court affirm the judgment of the circuit court And I thank you for your very kind attention Thank you Thank you, your honors In Simmons, this court did look at The situation of a marital relationship A remarriage And distinguished that Nobody is saying, and the court has never said That one person replaces another A lost child, a new child does not replace that A new spouse does not replace The personhood of the spouse who is lost However, the marital relationship Which is what loss of consortium is all about Has been replaced And this court in Simmons said In distinguishing the loss of consortium in a marital relationship From the loss of a child situation Said parents can have a parent-child relationship With more than one child at the same time Spouses cannot have a marital relationship With more than one spouse at the time So Justice Tice, as you were pointing out Once you have a new spouse You don't have a lost marital relationship anymore And that's what we're talking about When you have loss of consortium brought into the wrongful death act You are looking at no longer Material services as they existed before the loss of consortium You could do that You could just seek lost household services And all the other elements of the wrongful death act And not bring it as a loss of consortium damages You'd lose loss of society And sexual relations And you could do precisely what they're asking for Perhaps you would have some sort of an enormous damages calculation And you might choose to bring the case that way But that's not what happened in this case And it's not what we're discussing here When you have wrongful death With loss of consortium damages Sought, pursued, and awarded You have the unified conceptualistic consortium And that doesn't denigrate anyone We have a few cases that talk about The loss of the woman, the wife's services But this applies equally to the man's services Putting it within loss of consortium Comports with the way the law has developed And going forward You're merely saying that the Carter remarriage rule Applies across the board Whether it's a husband who's lost a wife Or a wife who's lost a husband And regardless of the particular facts This actually gives you an easy-to-apply Bright-line standard We don't have to figure out who's the engineer, who's the poet Who mows the yard, who cleans the dishes None of that matters When you've got a new spouse A new marital relationship The Carter remarriage rule applies And damages are simply cut off I do want to point out It's not that if you remarry you don't get any damages You still get the damages for the length of time You didn't have a marital relationship The remarriage rule says you only calculate those damages Up until the time there's a new spouse Because you can't be having a lost marital relationship While you're in another marital relationship At least not in Illinois And that's a very logical, sound rationale That has worked well for several decades And we urge this court to affirm I do want to briefly address the collateral source issue This really is very far-field None of the cases cited in the plaintiff's brief Talk about collateral source Regarding the provision of personal services It is usually in the context of You've got bills, fortuitously somebody else paid those bills Regardless whether it was an insurer Or some other third-party payer And the recovery is not diminished Just like here If the lost spouse earned $5,000 a year And the new spouse earns $500,000 a year The plaintiff is still entitled to recover All those lost earnings We're not saying that there's a collateral source on lost earnings But collateral source has never been used As far as looking at the type of services That we're talking about here And just with regard to Mr. Smith's testimony We did object to that testimony We preserved the challenge to it The record is quite clear through the offer of proof That it was $24,000 If you accept Mr. Smith's valuation There is nothing in the record that would support A $500,000 or $900,000 award For 15 months Of lost household services Which in this case the record shows was Cooking, cleaning, and flower planting So we do submit that on the record as it stands The jury award is excessive It's not supported by the evidence Whether you accept or reject the admissibility Of Dr. Smith's testimony And we have argued in the brief That he should not have been permitted to monetize Any aspect of loss of consortium But regardless how this court comes out on that issue We are entitled to a new trial Or a remittiture Because the evidence reviewed in its entirety Will not support the award that the jury gave in this case So there was a general verdict, correct? There was a general verdict And the argument's been made here Therefore we don't know what the jury did We can't figure out how they parsed all this out Well there are separate line items for, as I said Loss, Mr. Pesafumi's pain and suffering Through the loss of his wife There was a dollar amount awarded for that There was a dollar amount awarded for medical expenses There's a line item that has lost earnings And lost household services together That was included in one line Because the court ruled that those were analogous And they should be construed the same way And taken outside of loss of consortium And loss of society So we have a 1.434 million dollar award That is for both of those elements And the record does not support 1.434 million For lost earnings All the figures are discussed in the briefs So we know that we can't just affirm based on that So that's why we I'm trying to understand your argument Are you arguing that the verdict is not supported by the evidence? The amount awarded What is the standard? The amount awarded for lost household services And lost earnings, 1.434 million Is not supported by the evidence What is the standard that this court would review there? That would be manifest weight And that's really just though in showing here When you address the legal issue That we have prejudicial error If 1.434 was supported by the evidence We could show error that the court gave the wrong ruling But we wouldn't be able to show prejudice This court could view it as harmless error Even though the court was wrong in the standard that it applied But here when you cannot sustain the 1.434 It shows that it's harmful error We were prejudiced to a significant degree And that's why we are asking for the relief That we are asking for Either a new trial and that damages element Or a substantial remittance So you subtracted the concrete I'm assuming there was no dispute as to the past earnings Is that what you're saying? We have to accept that the past earnings I think there was a dispute about whether they were higher Than what the tracking of raises and things would have been But we have to just leave that as it is So we took the $918,000 And said that's supported We have another $500,000 And we don't have support in the record For that type of award For 15 months of lost household services Thank you, your honors We ask that the court reverse and remand For a new trial or enter a remittance We appreciate your time today Thank you. Agenda number 9, number 129761 Paul Pasciulli vs. Daniel Jurek Will be taken under advisement Thank you both very much for your arguments